Karen Budd-Falen (Wy. Bar No. 5-2467)
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, WY 82003-0346
Telephone: (307) 632-5105
Telefax: (307) 637-3891
karen@buddfalen.com

ATTORNEY FOR SKY HARBOR AIR SERVICE, INC.,
A WYOMING CORPORATION, H. PAUL MARTIN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SKY HARBOR AIR SERVICE, INC., A Wyoming Corporation, H. Paul Martin | ) ) ) | |
| Plaintiffs-Counter-Defendants, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-CV 150 D |
| SHELLY REAMS, individual, CHEYENNE REGIONAL AIRPORT BOARD, a Wyoming Corporation, SCOTT HINDERMAN, in his individual and official capacity, JAMES JAGUSCH, in his individual and official capacity, WILLIAM L. HICKMAN, in his individual and official capacity, KEVIN PAINTER, in his individual and official capacity, DAVE HARING, in his individual and official capacity, GREAT LAKES AVIATION, LTD d/b/a/ GREAT LAKES AIRLINES, JOHN DOES One through Five, in their individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS/COUNTER DEFENDANTS' RESPONSE TO AIRPORT BOARD'S RENEWED MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs/Counter Defendants Paul Martin and Sky Harbor (hereinafter "Sky Harbor") and by and through undersigned counsel respond to Defendant/Counter Plaintiff's Renewed Motion for Summary Judgment.  Although Sky Harbor agrees that summary judgment is appropriate in this case, based upon the facts, arguments and authorities set forth below, Sky Harbor respectfully requests that the Court find that no money is due to the Airport Board from Sky Harbor.

## Introduction

The Airport seeks to enforce Paint Shop Lease terms for rent, insurance, hazmat collection and attorneys fees.  For three reasons, this Court should not grant damages under these lease terms.  First, the lease terms the Airport seeks to enforce are illegal in that they violate federal statute and regulation.  The courts have held that a violation of an act of Congress may be used defensively to avoid the obligation of a contract.  Tenth Circuit Court precedent requires this Court consider this defense as it is raised in response to summary judgment motion before trial.  Courts are prohibited from enforcing an illegal obligation flowing from an agreement that violates federal law.

Second, some provisions in the lease itself are illegal and thus unenforceable.  Federal law and regulation dictate the lawful Paint Shop Lease's purpose.  Federal law also prohibits any change in lease arrangement and authorized use.  The prohibitions exist because the Airport's application for the limited available federal funds was selected over other communities and deprived them of their opportunity to use the federal funds.  Neither the Airport nor the Court

1

has the discretion to substitute their judgments regarding any new leasing arrangement and whether it serves the federally authorized purpose within the federal statutory scheme.

Finally, the lease itself commands that all terms be interpreted and enforced as consistent with federal law, regulations, and the requirements of federal grant assurances. The terms for rent, insurance, and hazmat are each expressly made "subject and subordinate" to these federal requirements by lease Provision 10 and must be read in light of those federal requirements.  Sky Harbor was assigned the lease on December 9, 2004, and took occupancy on January 1, 2005. The Airport's conduct with respect to the lease has violated federal law, regulation, and the requirements of its federal grant assurances and has put the Airport in breach of the lease since at least November 12, 2003, when it started violating the federal grant requirements.

Of the broad array of Airport lease violations, the most central is the unlawful, excessive rent term. The rent amount to which the Airport is entitled to receive under the lease is subject and subordinate to rent caps calculated based on federal grant requirements as well as the governing purpose of the federal grant.

Not least among the many benefits that have inured to the Airport as a result of its failure to comply with its legal obligations is a windfall of at least $55,802.73 in rent overpayments it has already collected from Sky Harbor. Sky Harbor contends the lease period ended a year earlier and the windfall was increased by another $38,000.00.  Sky Harbor paid a total of $189,602.73.  It is axiomatic that a party in breach of an agreement may not use the federal

courts to obtain "damages" flowing from its own breach.  Precedent and the express terms of the

lease prohibit an award of attorney fees in such circumstances as well.

### Statement of Facts[1]

The only lawful purpose of a lease governed by the United States Department of

Commerce, Economic Development Administration ("EDA") is "the creation of a state of the art

aircraft painting facility [that] will support community development objectives by creating 65

new jobs . . . ensure that low income residents of Cheyenne's poverty neighborhoods have access

to these positions . . . add to economic diversity" . . . and "strengthen the transportation sector."

See Plaintiff/Counter Defendant's Undisputed Statement of Material Facts and Response to

Defendant/Counter Plaintiff's Statement of Material Facts ("SOF") at 9.  The EDA selected the

Airport Board's proposal over others because of the significant private sector investment that

met the Public Works Economic Development Act of 1965's ("PWEDA") entrepreneurial focus

and promised long term commitment.

Unfortunately, the Airport Board did not continue with this federally mandated

commitment.  The Airport Board breached the Paint Shop Lease with Sky Harbor, causing the

elimination of a substantial business.  Specifically (1) the Airport raised the rent stated in the

Paint Shop Lease without the required EDA approval; (2) the Airport Board did not purchase the

insurance required under the lease; and (3) the Airport Board did not allow Sky Harbor to

---

[1]     Pursuant to Wyoming Local Rule 7.1(b)(2)(D), a separate numbered statement of facts
and response to Defendant/Counter Plaintiff's statement of facts is filed on even date herewith.

implement its previously approved hazmat plan.  Additionally, Sky Harbor has already paid

$189,602.72 in rent payments to the Airport Board or $93,802.73 in excess of the amount the

Airport Board was to charge Sky Harbor for rent pursuant to the EDA approved contract.

Because Sky Harbor has paid in excess of the rent it was supposed to pay, and based upon the

Airport Board's breaches of the lease, summary judgment should be entered in this case but the

Airport Board should take no monetary award.

## Standard of Review

Summary judgment is appropriate where the moving party demonstrates that no genuine

issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).  The factual record and reasonable inferences therefrom are construed in the

light most favorable to the nonmovant.  Id.

## Legal Argument

## I.    THE PAINT SHOP LEASE PURPOSE VIOLATES FEDERAL LAW

The Tenth Circuit Court refuses to enforce illegal contracts based upon "the elementary

principle that one who has himself participated in a violation of law cannot be permitted to assert

in a court of justice any right founded upon or growing out of the illegal transaction."  Sender v.

Simon, 84 F.3d 1299 (10th Cir. 1996); Merrill v. Abbott, 77 B.R. 843, 857 (D. Utah 1987)

(quoting Gibbs & Sterrett Mfg. Co. v. Brucker, 111 U.S. 597, 601, (1884); Martino v. Edison

Worldwide Capital (In re Randy), 189 B.R. 425, 441 (Bankr.N.D. Ill. 1995) (same quote);

Warner Bros. Theatres v. Cooper, 189 F.2d 825 (10th Cir. 1951) (the federal courts follow the

same rule); see also <u>Retz v. Siebrandt</u>, 181 P.3d 84, 90 (Wyo. 2008) (contracts contrary to public policy are not recognized by the court.).

In <u>Sender</u>, the district court refused to enforce a limited partnership agreement that had been formed in furtherance of an unlawful purpose. The Tenth Circuit affirmed, noting that this rule is not reserved merely for contracts which are illegal on the basis of their subject matter, but may also apply to contracts that appear facially legal. <u>Sender v. Simon</u>, 84 F.3d 1299 (10th Cir. 1996).

"A bargain may be illegal by reason of the wrongful purpose of one or both of the parties making it. This is true even though the performances bargained for are not in themselves illegal and even though in the absence of the illegal purpose the bargain would be valid and enforceable. A party who makes such a bargain in furtherance of his wrongful purpose cannot enforce it. . . ." <u>Sender</u>, quoting <u>Tri-Q, Inc. v. Sta-Hi Corp.</u>, 404 P.2d 486, 498 (1965) (quoting 6A Corbin on Contracts § 1518, at 744 (1962)).

As in <u>Sender</u>, the lease the Airport seeks to enforce for damages was formed in furtherance of an unlawful purpose. The only lawful purpose for the federally funded paint shop facility is described in the EDA grant requirements. In this case, the lease purpose intended by the Airport — specifically commercial rental profits — contravenes and violates the legally required purpose of the EDA, giving the lease an illegal purpose. Rather than the Airport's purpose, the Paint Shop Lease is governed by the Public Works And Economic Development Act of 1965 ("PWEDA") which authorizes the United States Department of Commerce,

Economic Development Administration ("EDA") to award federal grants to assist economically distressed communities by promoting job creation through increased innovation, productivity, and entrepreneurship.  42 U.S.C. § 3121(3).  The EDA fulfills its mission by fostering entrepreneurship, innovation and productivity through investments in infrastructure development, capacity building and business development in order to attract private capital investments and higher-skill, higher-wage jobs to regions experiencing substantial and persistent economic distress. 13 C.F.R. § 300.1; see also SOF at 1.

The EDA strictly prohibits "unauthorized use" of grant-funded facilities which occurs when an applicant fails to obtain approval of changes to the lease tenant, lease, authorized use, conditions, or encumbrances.  SOF at 6.  The EDA prohibitions last for an agreed upon "useful life."  For the paint shop, that useful life was fifteen years starting on June 23, 1997.  SOF at 7.

The purpose of the Airport grant for the Paint Shop Lease was "the creation of a state of the art aircraft painting facility [which] will support community development objectives by creating 65 new jobs . . . ensure that low income residents of Cheyenne's poverty neighborhoods have access to these positions . . . add to the economic diversity" and "strengthen the transportation sector." SOF at 10.  The EDA recorded the agreement granting federal funds to the Airport as a mortgage which incorporated as conditions the promises made by the Airport in the application, the financial assistance award conditions, special award conditions, the EDA approved lease, and the federal regulations found at 13 C.F.R. § 314.  SOF at 12.

The court is prohibited from awarding damages to the Airport under a lease that violates federal statute. Where an agreement violates federal statute, a party may defend itself against contractual obligations.  Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 81-82 (1982).  The United States Supreme Court has held that a violation of an act of Congress may be used defensively to avoid the obligation of a contract. "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."  Id. at 77, quoting McMullen v. Hoffman, 174 U.S. 639, (1989).  In allowing the defense of illegality, the Supreme Court stated:

> Refusing to enforce a promise that is illegal under the antitrust or labor laws is not providing an additional remedy contrary to the will of Congress. A defendant proffering the defense seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy based on the antitrust or labor laws. [A]nyone sued upon a contract may set up as a defense that it is a violation of the act of Congress, and, if found to be so, that fact will constitute a good defense to the action.

Kaiser Steel Corp. at 82.

Sky Harbor asserts a complete defense to the Airport's monetary claims because one of the lease terms which the Airport seeks to enforce – i.e., the payment of additional rent – violates federal statute.  Sky Harbor does not seek to avoid its obligation to pay rent to the Airport which is lawfully entitled under the Paint Shop Lease nor does Sky Harbor seek any additional affirmative remedy.  However, as was the case in Kaiser, Sky Harbor does seek to defend itself[2]

---

[2]    Although Sky Harbor did not plead the illegality defense, no pleading issue is presented because of Kaiser's and Sender's holdings that a court must satisfy itself that it is not enforcing an illegal contract.  The Tenth Circuit Court does not consider a failure to plead an affirmative

from the illegal obligation created by a lease term that violates the requirements of Congress'

PWEDA, its purposes, and its requirements.

"While it is frequently asserted that an illegal bargain is void, meaning thereby,

presumably, that the situation is just as if no contract had been made, this is not strictly so.  What

the courts really have done, in such cases, in the absence of a statute specifying otherwise, is to

take the view merely that the judicial machinery is not available for use to one who has

participated in an illegal transaction."  <u>Sender v. Simon</u>, 84 F.3d 1299 (10th Cir. 1996).  Under

this rule, it is appropriate to find that, because the Airport has received all of the rent it was

entitled to receive up to—and significantly beyond—the federally imposed amount, it has no

recoverable unpaid rent damages.

## II.    THE EDA RECORDED MORTGAGE AND LEASE SUBORDINATION CLAUSE OVERRIDE THE LEASE PROVISIONS RELIED UPON BY THE AIRPORT

Both the EDA recorded mortgage and the lease's subordination clause[3] expressly govern

over all other lease provisions that conflict with the EDA federal funding purpose and terms.

---

defense as an effective waiver if the issue is raised on summary judgment.  <u>Ball Corp. v. Xidex Corp.</u>, 967 F.2d 1440, 1443-44 (10th Cir. 1992).  The Airport cannot conceivably suffer any prejudice because Sky Harbor has consistently objected to the Airport's conduct regarding the parties' lease both before and after filing suit.

[3]    The unapproved term is subject and subordinate to the approved term.  Black's Law Dictionary defines "subject to" as "liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for."  Black's Law Dictionary, 1425 (6th ed. 1990).  It defines "subordinate" as "placed in a lower order, class, or rank; occupying a lower position in a regular descending series; inferior in order, nature, dignity, power, importance, or the like, belonging to an inferior order in classification, and having a lower position in a recognized scale; secondary, minor."  <u>Id.</u> at 1426.

SOF at 27.  Wyoming law mandates that referencing external agreements in a contract renders

the agreements as a part of the contract.  Kerper v. Kerper, 780 P.2d 923, 934 (Wyo. 1989);

Hensley v. Williams, 726 P.2d 90, 94 (Wyo. 1986); Busch Development, Inc. v. City of

Cheyenne, 645 P.2d 65, 58 (Wyo. 1982).  The EDA's recorded mortgage expressly states the

Paint Shop Lease is subject, subordinate, and inferior to the EDA/ Airport's federal agreement.

The entirety of the EDA/Airport federal agreement expressly includes the Airport application,

the federal grant award conditions including special conditions, the EDA approved lease for any

"Nominee," and the federal law and regulations.  The Paint Shop Lease is therefore subject and

subordinate to the Airport's compliance with federal law and agreements.

The intent of an assigned lease is determined from the lease as a whole, keeping in mind

the situation of the parties when the lease was made, its subject matter, and the purpose of its

execution.  Brown v. Johnston, 85 P.3d 422, 429 (Wyo. 2004).  No provision is to be construed

or rendered as meaningless.  Id.  In Wyoming, every commercial contract must be performed in

good faith.  Scherer Const. v. Hedquist, 18 P.3d 645, 659 (Wyo. 2001).  A party's actions must

be consistent with the agreed common purpose and justified expectations of the other party.

Scherer, 18 P.3d at 65.  The purpose, intentions, and expectations of the parties should be

determined by considering the contract language, the course of dealings between and conduct of

the parties.  Id.

The EDA approved lease terms in this case achieve the federal law's purpose and govern

the lease.  Because the Airport injected an illegal purpose into the bargain - - i.e., its desire to

profit from the Paint Shop Lease any unapproved lease terms violate the law and render the contract illegal and unenforceable.  The Paint Shop Lease's subordination clause requires the Court interpret the lease term as consistent with the requirements and purposes of federal law. If the term cannot be read as reasonably consistent with the law, its purposes, and its requirements, the term is unenforceable. The effect of this result may then be governed by the provision of the lease regarding "Severability of Invalid or Unenforceable Clause[s]."

The Airport's unapproved lease term imposing rent of $9642.60 per month violates the EDA approved term of $3200 per month plus approved debt-cost recovery capped at $5000 per month. SOF at 15, 22, 26; see also 13 C.F.R. § 314.6.  In contrast, the Airport seeks to enforce an illegal contract term of rent in excess of $250,000.00.  However, as required by the EDA, the Airport was only entitled to receive $5000 per month for Sky Harbor's first five months of occupancy before the Airport's EDA approved debt was repaid.  Sky Harbor owed rent of $3200 per month for the rest of its occupancy term until the lease terminated[4].  The Airport is owed no rent.

---

[4]       Sky Harbor and the Airport also disagree when the lease terminated and therefore disagree how much rent Sky Harbor owed under the lease.  Although Sky Harbor contends that rent owed should be computed during the period before the lease terminated on December 7, 2006, the Court may decide that Sky Harbor should pay for the term of its occupancy or until March 23, 2008.  Choosing that figure, total rent owed would be $133,800.  As the payments discussion below shows, Sky Harbor paid the Airport a total of $189,602.73.  Thus, even with the longer rent period, no damages are owed to the Airport.

III.    **THE AIRPORT TERMINATED THE LEASE ON DECEMBER 7, 2006 AND IT INTENTIONALLY AND DELIBERATELY WAIVED POSSESSION FORFEITURE TO COMPLY WITH ITS FEDERALLY REQUIRED PAINT SHOP BUSINESS OPERATIONS UNTIL MARCH 23, 2008**

Ordinarily, lease termination causes immediate forfeiture of possession.  In the present case however lease termination did not trigger immediate forfeiture of possession but rather a long period of negotiation and several attempts to form a new lease agreement that complied with the requirements of federal law and federal grant assurances.  The previous Airport Managers terminated the lease via written notification of "immediate" termination on December 7, 2006, a full year earlier than claimed by the Airport Board.  SOF at 35 - 37.

The Airport Board now relies upon the new Airport Manager's written notification of lease termination a year later to dramatically increase its claimed damages.  This is in error.  First, the Airport Board waived forfeiture of possession because no other tenant was available to comply with the Airport Board's federal legal requirements of operating the required paint shop business.  SOF at 55.

Second, while it waived forfeiture of possession, the waiver continued from December 7, 2006 until Sky Harbor vacated on March 23, 2008.  At that time, the Airport forced the forfeiture of Sky Harbor's facility possession, its customer, vendor, and employee business relationships; and its substantial, private financial investment of over $800,000.00.  SOF at 50.

"Forfeiture is harsh and equity disfavors forfeiture for an alleged delayed payment of rent." Brown, 85 P.3d at 431.  The Wyoming Supreme Court has said:

11

> It is now well established in law and in equity that forfeitures are not favored.
> Before one can declare a forfeiture it must appear that he has a clear right and
> then too he himself must be free from blame in the premises. Every reasonable
> presumption is against a forfeiture and every intendment and presumption is
> against a person seeking to enforce it. Provisions for forfeiture may be waived
> and the courts are quick to take advantage of circumstances indicating such an
> intention.

Id. (citations omitted).

After the Airport waived immediate possession forfeiture, the Airport Board asked and Sky Harbor agreed to continue operating the federally required paint shop business while negotiating new lease terms. SOF at 40 - 48. Those negotiations were unsuccessful. SOF at 48, 51 - 52.

During the period between December 7, 2006 through March 23, 2008, the Airport waived forfeiture of possession and rent for occupancy. Waiver occurred because the parties decided to continue operations while they negotiated new lease terms. SOF at 40 - 48. The Airport promised new lease terms for capitalization, and Sky Harbor agreed to pay rent from the financial capitalization after the promised capitalization terms were provided. SOF at 43, 45. The Airport encouraged Sky Harbor's continued business operations and discussed new lease terms at the Airport Board meeting on May 9, 2007. SOF at 41. After May 17, 2007, the new Airport Manager discussed proposed lease terms with Sky Harbor's lenders and investors. SOF at 42. The financiers advised the Airport that financing required that the Airport give Sky Harbor federally compliant lease terms that included reducing rent for the purpose of eliminating the balloon payment. SOF at 43. All market evaluations showed the EDA approved $3200 per

12

month rent amount had not changed and was confirmed when the Airport later rented the facility for $3750 per month.  SOF at 26.

On June 23, 2007, the Airport Board members and Manager traveled with Sky Harbor and Wyoming Business Council members and made a presentation to Denver aircraft manufacturer, Adam Aircraft for an exclusive aircraft painting contract for all of its production. SOF at 46.  Sky Harbor immediately began performing on the Adam contract.  Id.  On July 2, 2007, the Airport held a special meeting specifically to decide whether Sky Harbor's possession should continue or whether Sky Harbor should vacate the facility.  SOF at 47.  The Airport decided to continue Sky Harbor's possession and continued operation of the federally required paint shop business.  SOF at 48.

The arrangement continued until the Airport Manager decided the illegal, large debt service did not allow any possibility of rent reduction.  SOF at 49.  Sky Harbor enlisted the help of city and county officials who urged the Airport against causing the loss of the going concern operations and thirty jobs that had been created.  SOF at 50.  The Airport Board held a special meeting in January, 2008 which city and county officials attended.  The Airport Board voted on Sky Harbor's federally compliant lease proposal which failed on a 2-2 tied vote.  SOF at 51.

The Airport Board ordered its counsel to continue the legal action so that Sky Harbor's business operations could continue to complete Adam Aircraft work in February and two other

orders scheduled previously that Sky Harbor was unable to find other shops to accommodate.[5]

SOF at 52.  The parties' counsel negotiated a stipulated agreement that stated Sky Harbor owed

no rent, had not breached the lease, and would voluntarily vacate the facility by March 25, 2008.

SOF at 53.  This stipulation complied with W.S. § 1-21-1008.  Sky Harbor completed Adam

Aircraft work in March of 2008, and vacated on March 23, 2008.  Id.

At its March Airport Board meeting, the Airport voted to issue a request for lease

proposals including one from Sky Harbor.  At its May 23, 2008 Board meeting, the Airport

Board approved Great Lakes Aviation's ("GLA") proposed, unauthorized and unqualified

tenancy that violated Sky Harbor's Noncompetition Agreement.  SOF at 54-55.  The Airport

Board had no lawful agreement imposing rent; Sky Harbor had paid the Airport more than the

legal rent amount, and the Airport Board waived its right to collect rent because Sky Harbor's

continued business operations appreciably benefitted the Airport and allowed it to comply with

federal law.

## IV.   PROPER COMPUTATION SHOWS THAT THE AIRPORT IS OWED NO RENT, INTEREST, FEES, OR ATTORNEY FEES

Proper computation of rent according to the governing EDA rent term shows that the

Airport is owed no rent and actually it overcharged on the rent it was owed.  Given the Airport is

not entitled to fees, it is not entitled to interest, fees, and attorney fees for collection.

---

[5]      Aircraft paint and refurbishment are usually month long projects that are scheduled in the summer for the slower winter months, when the long down time is more convenient for customers.

A lessor seeking recovery of alleged unpaid rent may recover only actual contract damages less all proper deductions.  Goodwin v. Upper Crust, 624 P.2d 1192, 1197 (1981); see Brown v. Johnston, 85 P.3d 422, 432 (Wyo. 2004) (breach of lease provision requires proof of actual damages); W.S. Stat. § 1-21-1008(b).  The Airport's evidence shows Sky Harbor paid a total of $189,602.73 in rent.  The considerable overpayment was caused by the Airport and based upon an illegal, invalid obligation.

The Airport states that Sky Harbor payments were applied to "deferred" amounts.  See Airport Renewed Motion for Summary Judgment ("Airport Br.")  at p.2.  However the lease permits rent recovery only of "accrued" unpaid amounts.  No unpaid rent accrued after December 7, 2006.  Sky Harbor was liable for rent from January 1, 2005 through December 31, 2006, a 24 month period.  Total rent owed is five months at $5000.00 per month and $3200.00 per month thereafter for a total of $85,800.00.  The Court should not enforce the illegal contract's rent term and decide that Sky Harbor must pay a greater amount.  Because of the Airport's 2006 lease termination and its subsequent waiver, the Court should not enforce the Airport's later lease termination date, and decide that Sky Harbor must pay a greater rent amount.

## V.    THE AIRPORT FAILED TO PURCHASE THE INSURANCE REQUIRED BY THE LEASE AND CAUSED UNACCEPTABLE RISK EXPOSURE THAT BREACHED THE LEASE

Sky Harbor's duty to reimburse property insurance benefits applies only if the Airport complied with Paint Shop Lease Provision 34, by purchasing insurance allowing the Airport to

15

waive right of subrogation.  SOF at 57.  The Airport purchased insurance that did not protect Sky

Harbor from subrogation, and it did not provide the full hazard coverage specified by the EDA.

SOF at 58.  The party that breaches first cannot complain when the injured party fails to perform.

Williams v. Collins Communications, Inc., 720 P.2d 880, 891 (Wyo. 1986).

The Airport's breach eliminates Sky Harbor's performance to pay for property insurance

that failed to protect it and caused Sky Harbor' significant and unacceptable exposure to

uninsured hazard.  SOF at 58.

The email submitted by the Airport shows that the Airport did not comply with Provision

34.  Airport Br. Exh. A-6.  The Airport's email evidence shows that the Airport did not provide

the required insurance before the lease terminated and could not because it *chose* as its insurer, a

local pool entity, that does not sell waive subrogation of claims.  Id.  Sky Harbor attempted to

purchase its own property insurance; however, it has no insurable interest and could not make

the purchase.  SOF at 58.  Sky Harbor communicated that its significant risk exposure was

unacceptable on more than one occasion and requested the Airport take the required action under

the lease, to no avail.

The Airport's failure to purchase the lease required insurance also breached its federal

agreement.  The recorded mortgage required full hazard coverage.  The Airport's claim for

reimbursement provision is thus subject and subordinate to Lease Provision 10, and the Airport's

breach precludes its recovery for property insurance reimbursement.

16

The Airport is mistakenly directing this Court to Provision 17 to try to collect reimbursement for property insurance.  Sky Harbor complied with Provision 17 when it purchased property insurance itself as part of its liability coverage and named the Airport as an additional insured.  The Airport never purchased the insurance required under lease provision 34. Only when it did would the Airport invoke a reimbursement requirement by Provision 17.  The Lease Provision 17 as drafted by the Airport is confusing; however, the Airport clarified through Provision 34 what insurance was required to be purchased before Sky Harbor had to reimburse the Airport.  Any other interpretation would render Provision 34 meaningless in violation of the rules of contract construction.

## VI.   THE AIRPORT UNREASONABLY IGNORED THE APPROVED HAZMAT DISPOSAL REQUIREMENTS

The Airport seeks reimbursement for hazardous waste materials however, the Airport unnecessarily incurred this expense when it unreasonably ignored Sky Harbor's waste removal plan approved by state and federal agencies and did not allow a reasonable time for performance. SOF at 59.  "Where, as here, no time for performance is specified in a contract, the law implies performance must be within a reasonable time, and what is a reasonable time depends upon the circumstances of each case." Scherer Const. v. Hedquist, 18 P.3d 645, 657 (Wyo. 2001) quoting G.C.I. Inc., v. Haught, 7 P.3d 906, 909 (Wyo. 2000).  "What constitutes a reasonable time in any particular case is a question of fact." Id.

The paint shop has its own internal hazardous waste disposal system that, when properly used under the government approved plan, would have disposed of the hazmat at a fraction of the cost that the Airport paid to an external contractor.  SOF at 59.

The Airport unreasonably ignored federal law, unreasonably removed hazmat within days after Sky Harbor had vacated the facility, while requesting Sky Harbor submit terms for again occupying the facility.  The Airport should have followed the government approved plan and allowed Sky Harbor to use the proper system for disposal.  The government approved plan did not require removal for another six months. SOF at 59.  Had Sky Harbor been allowed to follow the approved plan, the Airport would not have incurred any expense.  Wyoming law specifically requires reasonable time for performance.   The Airport fails in its proof as to the proper measure of these damages because it did not meet its duty to act reasonably and allow Sky Harbor to perform disposal at its expense.

## VII. THE AIRPORT'S FEDERAL AVIATION ADMINISTRATION AGREEMENTS REQUIRE THE AIRPORT CHARGE ONLY REASONABLE, COST-BASED FEES TO USERS, AND PROHIBIT BOTH COMPETITORS AND THE AIRPORT ITSELF FROM AVOIDING THE FINANCIAL INVESTMENT THAT SKY HARBOR HAS MADE TO MEET AIRPORT-IMPOSED CONDITIONS

As stated above, the lease's subordination clause requires the Airport comply with all of its state and federal agreements executed to improve, expand, and develop the Airport.  In its unapproved bond refinancing, the Airport acknowledged that federal grant assurances require it charge only fair, reasonable, cost-based fees on Airport users.  Grant assurance 22 specifically prohibits a competitor or the Airport itself to perform any of Sky Harbor's leased operating

rights and privileges unless the competitor or the Airport meets the same conditions as applied to or burdening Sky Harbor's furnishing of such services as the Airport's authorized, commercial aeronautical service provider.

The Airport has obtained over $30 million dollars in federal funding from the FAA, since 2004, and the funding imposed federal grant assurances.  The Airport, the city of Cheyenne, Laramie County, and Wyoming Department of Transportation ("WYDOT") Aeronautics, have signed federal agreements to obtain federal grant funding at the Cheyenne Airport.  All agreed to act as sponsors and agents and are fully liable for compliance with all federal grant funding agreements.  SOF at 28 - 29.  The FAA agreements specifically state that the grant assurances apply to any federal agreement that has provided any federal funds to the Airport.  The Airport's FAA agreements require the Airport comply with the EDA federal agreement.  Id.

Neither the Airport nor any competitor can avoid Sky Harbor's multi-million dollar financial investment to meet Airport and federally imposed conditions and strip off Sky Harbor's profitable services without violating the Airport's federal agreements. 49 U.S.C. § 47107 (1) through (6).  Sky Harbor's paint shop occupation fulfilled Airport imposed conditions.  The excessive rent, failure to provide insurance and failure to use Sky Harbor's hazmat plan are violations of the lease, thus, prohibiting and additional monetary charges to Sky Harbor.

**Conclusion**

WHEREFORE, although Sky Harbor believes that summary judgment is appropriate in this matter, the Airport Board should be granted no recovery for its Renewed Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 16th day of August, 2010.

/s/Karen Budd-Falen
Karen Budd-Falen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, WY 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Telefax
karen@buddfalen.com

ATTORNEY FOR SKY HARBOR AIR SERVICE, INC.,
A WYOMING CORPORATION, H. PAUL MARTIN

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I caused a true and correct copy of the foregoing Plaintiffs/counter Defendants' Response to Airport Board's Renewed Motion for Summary Judgment, to be served electronically this 16th day of August, 2010 to the following:

Bradley T. Cave
Joanna R. Vilos
Tyler Garrett
Holland & Hart LLP
bcave@hollandhart.com
jvilos@hollandhart.com
Tjgarrett@hollandhart.com

Richard G. Schneebeck
Robert C. Jarosh
Lindsay A. Woznick
Hirst Applegate, P.C.
rschneebeck@hirstapplegate.com
rjarosh@hirstapplegate.com
lwoznick@hirstapplegate.com

Raymond W. Martin
Kristin M. Nuss
Sundahl, Power, Kapp & Martin
rmartin@spkm.org
knuss@spkm.org

Melissa E. Westby
Wyoming Attorney General's Office
Herschler Building, 1st Floor NW
Cheyenne, WY 82002
mwestb@state.wy.us

Kelly Rankin
Nicholas Vassallo
Assistant U.S. Attorney
nick.vassallo@usdoj.gov

                                        /s/Karen Budd-Falen
                                        Karen Budd-Falen