Raymond W. Martin, # 5-2384
Kristin M. Nuss, #6-4075
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue, P.O. Box 328
Cheyenne, WY 82003-0328
(307)632-6421
(307)632-7216 (fax)
rmartin@spkm.org
knuss@spkm.org
*Attorneys for Airport Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| SKY HARBOR AIR SERVICE, INC., ) <br> A Wyoming Corporation, H. Paul Martin, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> SHELLY REAMS, individual, CHEYENNE ) <br> REGIONAL AIRPORT BOARD, a Wyoming ) <br> Corporation, SCOTT HINDERMAN, in his ) <br> individual and official capacity, JAMES ) <br> JAGUSCH, in his individual and official ) <br> capacity, WILLIAM L. HICKMAN, in his ) <br> individual and official capacity, KEVIN ) <br> PAINTNER, in his individual and official ) <br> capacity, DAVE HARING, in his individual ) <br> and official capacity, GREAT LAKES ) <br> AVIATION, LTD./dba GREAT LAKES ) <br> AIRLINES JOHN DOES One through Five, in ) <br> their individual and official capacities, ) <br> ) <br> Defendants. ) | Case No. 08-CV-150-D |

**AIRPORT BOARD'S REPLY TO PLAINTIFFS/COUNTER DEFENDANTS'
RESPONSE TO AIRPORT BOARD'S RENEWED MOTION FOR SUMMARY
JUDGMENT**

**COMES NOW** the Airport Board, by and through its attorneys, Sundahl, Powers, Kapp & Martin, LLC and in Reply to Plaintiffs' Response to the Board's Renewed Motion For Summary Judgment, sets forth as follows.

I.  Court's Order On Summary Judgment

The Order granting all Defendants' summary judgment motions was entered on May 27, 2010. Relevant to The Airport Board's counterclaim for damages concerning Plaintiffs' breach of the Paint Shop Lease, this Court found the October 23, 2006 Lease Amendments, which were negotiated by counsel for Plaintiffs and the Airport Board, were clear and unambiguous. (See Order at p. 57). The Lease Amendments set forth the parties' agreement regarding past rent owed and future increases, as well as incorporating by reference the terms and conditions of the underlying Paint Shop Lease. Specifically, this Court held "Summary judgment is appropriate on the Board's counterclaim. Having determined so, the only issue remaining for the Court to resolve is the amount due to the Board from Plaintiffs." (Order at p. 58). Under the guise of a subordination argument, which has already been decided, Plaintiffs are again trying to reopen the liability issue. Despite the Court's determination, and the fact Plaintiffs negotiated lease terms in October 2006 which allowed them to remain in the Paint Shop after failing to make rent payments for over a year, Plaintiffs are now asserting they have paid too much rent and it would be against public policy for them to have to pay for the property insurance that covered the building during their tenancy, or to reimburse the Airport for the removal of the hazmat they and their predecessor generated and were obligated to remove under the

2

lease assignment. Apparently, Plaintiffs believe it is good public policy to let the taxpayer foot the bill.

Returning to the Order on Summary Judgment, the Court discussed the various defenses raised by Plaintiffs to the Airport Board's counterclaim and dispensed with them in toto. Specifically, this Court found that the counterclaim was filed on time; that the Stipulated Order by the Laramie County Circuit Court did not operate to forgive overdue past rent; that the collection of overdue rent payments was not barred by res judicata; that unpaid rent had not been forgiven through rescission; that the Board had not engaged in misconduct and did not seek reimbursement with unclean hands; and that the mutual release executed in the Paint Shop Lease Amendments disposed of a number of less descript claims. (See Order at pp. 48-56).

Absent was any discussion regarding the issue of whether the Paint Shop Lease was illegal, which is creatively, but inappropriately, now being asserted by Plaintiffs for the first time despite the fact the Court has ruled the only issue to be resolved is the amount due to the Board from Plaintiffs. Plaintiffs have further asserted for the first time that the Paint Shop Lease was terminated in December 2006. What occurred to trigger the notice of termination was Plaintiffs' lender was slow to release loan proceeds by which Sky Harbor could begin to pay staged back rent on the Paint Shop and delinquent fuel flowage on the FBO Lease, as well as once again start to pay monthly Paint Shop rent as it became due consistent with the terms of the October 23, 2006 Lease Amendments. It was never presented or construed by the parties that the "Airport waived

forfeiture of possession" by simply giving notice of termination pending receipt of payment under the new 2006 Lease Amendments as is now being asserted by Plaintiffs, and which is contrary to the parties' course of dealing to the time Plaintiffs surrendered possession on March 25, 2008. (Plaintiffs' Response at p. 11).

Defendant notes that during oral argument on all Defendants' Motions For Summary Judgment, it was ruled the evidence was closed in this matter. Additional evidence to substantiate damages was invited on the Airport's counterclaim, but in typical fashion Plaintiffs have gone further and submitted hundreds of pages of new exhibits obtained outside the course of the discovery phase of this case, many of which go to the issue of liability. The Airport objects to all new affidavits that do not directly address the damages at issue, new documents not presented during the normal course of discovery in the case, or as exhibits to the prior Summary Judgment Motions or in opposition to the motions as they may pertain directly to the counterclaim/damage issues.

II.  Plaintiffs' Contract Illegality Argument

The focus of Plaintiffs' argument is that the Paint Shop Lease terms are illegal because they violate federal statutes and regulations associated with the United States Department of Commerce's economic development loan (hereinafter "EDA loan"). Plaintiffs assert this issue can be raised now for the first time at the summary judgment damage phase, liability having been determined, and the Court is compelled to satisfy itself it is not enforcing an illegal contract.

Plaintiffs cite to *Ball Corp. v Xidex Corp.* 967 F. 2d 1440, 1443-44 (10th Cir.1992) for the proposition that the Tenth Circuit Court of Appeals does not consider the failure to plead an affirmative defense as an effective waiver if the issue is raised on summary judgment. (Plaintiffs' Response at n.2). Plaintiffs' statement is only partially accurate. In *Ball Corp.*, the Court held that where the plaintiff received notice of the defense at least three months prior to trial, the issue was properly litigated at trial. *Ball Corp.*, 967 F.2d at 1444. The opinion does not indicate whether discovery was still ongoing at the time the defense was raised in a summary judgment motion. The Court noted that the purpose of Rule 8(c) is to put a plaintiff on notice well in advance of trial that a defendant intends to present a defense in the nature of an avoidance. *Id.* at 1443-1444. However, on other occasions, the Tenth Circuit has noted that a new defense can only be raised at summary judgment in the absence of prejudice to the opposing party. *See, e.g., Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006). "Rule 8(c)'s core purpose is to act as a safeguard against surprise and unfair prejudice." *Id.* at 1201. Unfair surprise and significant prejudice exists when a new defense is raised less than three months before trial, after more than two years of litigation and a full year after the discovery cutoff. Sky Harbor has denied the Airport Board the opportunity to discover facts and legal issues relating to the new defense. *See, e.g., Eagle Well Service, Inc. v. Central Power Systems & Services, Inc.*, 2009 U.S. Dist. LEXIS 77115, *6 (D. Kan. 2009).

Even if the Court finds there is no prejudice as a result of the tardily-raised affirmative defense, the defense has no merit. Plaintiffs rely on two cases for the

5

proposition this Court is prohibited from awarding damages to the Airport as purportedly the Paint Shop Lease violates a federal statute, namely, the Public Works and Economic Development Act of 1965 (hereinafter "the Act"). (See Plaintiffs' Brief at pp. 5 and 7). Without first addressing whether these Plaintiffs have standing to address the loan agreement between the Airport and the Commerce Department,[1] it is being asserted that it is illegal for the Airport Board to seek "commercial rental profits". Plaintiffs contend this would constitute an illegal purpose, more specifically, a purpose juxtaposed to the EDA's goal to enhance business development and job creation through the authorized use of grant funded facilities. (Plaintiffs' Brief at p. 6). No statutory authority or case law has been cited to support the proposition it is in fact illegal for the recipient of a matching EDA loan to realize a profit on the lease of a facility renovated, in part, with EDA funds. The EDA requirement that a fair market rate is to be charged for the Paint Shop would generally lead to a contrary conclusion.

Plaintiffs claim the rental rate to which they are subject is $3,200.00, a rate which reflects what was paid on the Paint Shop when it was used as a hangar and before approximately one million dollars was spent to transform it into a state of the art Paint Shop facility. (See, Plaintiffs' Exhibit B3 at pp. 21 & 25). Plaintiffs have chosen to minimize the additional $5,137.44 monthly debt service on the loan as part of the rental rate that was initially discussed with EDA. Plaintiffs attempt to imply that debt service

---

[1] As discussed more thoroughly under Section III, below, the Act does not provide for a private cause of action for Sky Harbor to address the loan agreement between the Airport and the Commerce Department.

on the Paint Shop has been extinguished due to the Airport consolidating its debts, including the Paint Shop loan, by the 2005 bond issue. The debt remained and had to continue to be serviced. It is disingenuous for Plaintiffs to suggest a fair market rent for the renovated Paint Shop should have been $3,200.00, the same rate charged for when the facility was an aged hangar storage space.

Admittedly, with the death of Airport administrator Jerry Olson who had secured the EDA loan, and the hiring of a replacement administrator, Scott Hinderman, the Airport inadvertently failed to seek EDA approval regarding the change in tenancy or a change in lease terms when the first lessee, Cheyenne Airmotive went bankrupt and Heli-Support leased the building. (See, Defendant's Exhibit A-1). Plaintiffs have failed to cite to the Act, case law or administrative action which they claim makes the Heli-Support Lease that was subsequently assigned to Sky Harbor illegal, thereby voiding Sky Harbor's Paint Shop Lease or otherwise allowing Plaintiffs to unilaterally rewrite the terms they agreed to as part of the assignment and the October 23, 2006 Lease Amendments.

More pointedly, Plaintiffs ignore the plain language of the October 8, 1996 EDA letter to Airport Administrator Gerald Olson, which stated the Paint Shop Lease was to be at fair market value. (See Plaintiffs' Exhibit B4 at p.3) (See also Exhibit A-2, where the EDA says the lease "cannot be a giveaway, that is it needs to [be] in the range of a fair market value"). Further, the Grant Assurances require the Airport to be as self-sustaining as possible (Plaintiffs' Exhibit B11, Grant Assurance No. 24). Notably, Sky Harbor

took an assignment of the November 12, 2003 Heli-Support lease, effective December 2004 at the same rental rate of $9,500.00. (See Plaintiffs' Exhibit B6). Clearly, this is good evidence that the rent was at a fair market rate based upon a willing lessor and two willing successive lessees. Plaintiffs cite to nothing in the Act which makes it illegal for the Airport to service its debt on the Paint Shop, or for that matter, to make a small return on its mutual investment in the Paint Shop improvements which were ultimately funded at a greater rate by the City of Cheyenne at $650,000.00.

Plaintiffs contend the amount of rent charged was excessive and unlawful despite the fact Plaintiffs were represented by counsel when the October 23, 2006 Paint Shop Lease Amendments were signed. (Plaintiffs' Brief at p. 2). As has become the pattern in this case, Plaintiffs play fast and loose with the facts when they compare the Paint Shop rent to the base FBO rent. Plaintiffs failed to mention the FBO rent has a significant additional rent feature in the form of fuel flowage, which is a per gallon assessment on sales of fuel by the FBO. (See, Plaintiffs' Exhibit B21). It is further disingenuous for Plaintiffs to compare their rent to that paid by Color Design, LLC for only a portion of the Paint Shop which was further subject to disruption at anytime as a result of this litigation. (See Plaintiffs' Exhibit B30). Summing up the rental rate issue, it is fair to say that the lease of the Paint Shop to three less-than-robust tenants since the renovation of the building in 1996, and the dearth of rent actually received over the span of years has been anything but commercially profitable for the Airport.

III. <u>Plaintiffs' Case Law- Illegal Contracts</u>

Plaintiffs' reliance on *Kaiser Steel Corp. v. Mullins*, 445 U.S. 72 (1982) is misplaced. In that case, a union's collective bargaining agreement required contributions be made to a union memberships' health and retirement fund. It was determined to create a restraint of trade by chilling the viability of purchasing coal from a non-union employer, which had broad ranging public policy implications under the Sherman Anti-Trust Act and the National Labor Relations Act. The contract at issue in Kaiser was found to be illegal because it put non-union coal producers at a disadvantage in competing for sales to steel producers. The same or similar overarching public policy concerns cannot be found to exist for Sky Harbor's Paint Shop Lease with the Cheyenne Airport, despite the Airport's inadvertent failure to have the EDA approve the change in tenancy or the relatively minor rent increase which in practice reflected a fair market rental rate between a willing lessor and lessees since the inception of the Paint Shop Lease in 1996. Moreover, it is significant that the EDA was petitioned by the Airport and did approve a change to broaden the purpose for which the facility could be used in 2009 after market conditions had shown the Paint Shop was not viable when limited to its previous more restricted purpose. (See Plaintiff's Exhibit B17). Also see Defendant's Exhibit A-1 which explains the Airport's position regarding its inadvertent failure to get EDA approval on the Sky Harbor Paint Shop Lease, and the EDA's response in support of the Airport's position.

The other case relied upon by Plaintiffs in support of their contract illegality defense is *Sender v. Simon and Baker Family Partnership*, 84 F. 3d 1299 (10th Cir. Ct.

1996).  In that case four innocent investors fortuitously managed to withdraw more money from the Ponzi scheme than they put into it. A bankruptcy trustee relied upon the Colorado Uniform Partnership Act in an effort to recoup the excess money from the innocent investors based upon a theory the excess payments constituted fictitious profits to which the defendants were not entitled.

It was determined the partnership agreements were not enforceable, and in any event the Ponzi creator had commingled all investment contributions into a single investment fund making any effort to reconstruct debtor partnerships for determining excess contributions in violation of the Partnership Act a useless exercise.

The Court spent a good deal of time addressing the standing of the bankruptcy trustee to bring the action under the Bankruptcy Code. Here Plaintiffs have failed to establish they have standing under the Public Works and Economic Development Act of 1965. The Act, codified at 42 U.S.C. §§3121 et seq., provides that its purpose is to promote a strong and growing economy throughout the United States.  42 U.S.C. §3121(b) and 13 C.F.R. 300.1.  It does not provide that its purpose is to create a private right of action for citizens to complain that the recipient of a loan did not comply with the precise requirements and conditions of the loan. Likewise, the penalties for not meeting the EDA's requirements do not include a private right of action. See, e.g., 42 U.S.C. §3215 and 13 C.F.R. 302.18.  Sky Harbor is not a party to the contract between the Airport and the EDA. The only party with any right to attempt to declare the agreement void for any perceived failure to meet requirements is the EDA. The Act does not set

forth any circumstances which would make the lease illegal and void. Sky Harbor has no evidence that the Airport has done anything that would make the lease illegal and void. The EDA has informed the Airport that the subsequent changes in lessee are consistent with the grant so long as the lease agreements are similar to the first lease agreement that was approved by the EDA. (See Exhibit A-1).

Moreover, the issue of Sky Harbor's standing to complain on behalf of the EDA is analogous to the earlier issue of whether it had a private right of action to complain of noncompliance with federal grant assurances. This Court has previously considered whether a private right of action is created for noncompliance with federally imposed conditions, such as grant assurances, and has held that the remedy is not a private cause of action, but rather federal action to terminate funds. (See Airport's Memorandum in Support of Motion for Summary Judgment filed August 21, 2009, at p. 20). Sky Harbor has not shown any evidence of a congressional intent to provide a private right of action in this situation.

IV. Hazmat Removal, Property Insurance Reimbursement And Attorneys' Fees

Relative to the Airport's previous efforts to have Plaintiffs remove hazmat from the building pursuant to the Paint Shop Lease, Plaintiffs had never taken the position they intended to rely on Wyoming DEQ regulations, or a DEQ time table for removal of the hazmat by use of any internal systems within the building. Instead, Plaintiffs denied they had any responsibility to remove the hazmat when put on notice it was a requirement of the Lease. Subsequently, the Airport sent letters to Sky Harbor's counsel requesting

reimbursement of the hazmat removal expenses. (See Exhibit C to the Airport's Summary Judgment Memorandum). Interestingly and inconsistent with the Lease, Sky Harbor's counsel responded that it was Sky Harbor's position that it had no obligation to remove the hazmat after it terminated its possession of the Paint Shop. Counsel's reference to the "stipulated rescission of the Paint Shop Lease" is a direct but erroneous reference to the parties' Circuit Court stipulation, which this Court has already ruled did not rescind Plaintiffs' obligation to pay rent. Similarly it did not rescind Plaintiffs' obligation to reimburse the Airport for the hazmat removal. (See Exhibit A-2).

Likewise the Paint Shop Lease and the parties' course of conduct does not support Plaintiffs' position the Airport is not entitled to reimbursement for its payment of the property insurance on the building while Sky Harbor occupied it. Finally, Plaintiffs are not heard to raise a material question of fact regarding the Airport's specific claim and evidence for attorney's fees pursuant to the Paint Shop Lease, other than to assert that the Lease is illegal and hence the recovery of attorneys' fees is not allowed.

**WHEREFORE,** the Airport Board agrees with Plaintiffs that summary judgment is appropriate in this matter, and absent a finding the Paint Shop Lease is illegal, Plaintiffs have not set forth material questions of fact disputing the damage amounts at issue under the express rent and associated fees structure of the Paint Shop Lease, or as evidenced by the invoices for reimbursement for property insurance premiums, hazmat removal and attorneys' fees paid by the Airport Board as a direct result of Plaintiffs breach of the Lease. Thus, the Airport Board respectfully requests the Court enter an

Order granting the damage amounts set forth in its Renewed Motion For Summary Judgment.

Respectfully submitted this 23rd day of August, 2010.

*[signature]*
Raymond W. Martin, # 5-2384
Kristin M. Nuss, #6-4075
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue, P.O. Box 328
Cheyenne, WY  82003-0328
(307)632-6421
(307)632-7216 (fax)
rmartin@spkm.org
knuss@spkm.org
*Attorneys for Airport Defendants*

13

## CERTIFICATE OF SERVICE

I certify the foregoing pleading was served on this 23rd day of August 2009, and that copies were served as follows:

| | |
|---|---|
| Karen Budd-Falen<br>Budd-Falen Law Office, LLC<br>PO Box 346<br>Cheyenne, WY 82003 | [____] U.S. Mail<br>[____] Hand Delivered<br>[____] E-mailed<br>[ ✓ ] Efiled |
| Brad Cave. Joanna R. Vilos, Tyler Garrett<br>Holland & Hart, LLP<br>2515 Warren Avenue, Suite 450<br>P.O. Box 1347<br>Cheyenne, WY 82003-1347 | [____] U.S. Mail<br>[____] Hand Delivered<br>[____] E-mailed<br>[ ✓ ] Efiled |
| Richard G. Schneebeck, Robert C. Jarosh,<br>Lindsay A. Woznick<br>Hirst Applegate, P.C.<br>1720 Carey Avenue, Suite 200<br>P.O. Box 1083<br>Cheyenne, WY 82003-1083 | [____] U.S. Mail<br>[____] Hand Delivered<br>[____] E-mailed<br>[ ✓ ] Efiled |
| Melissa E. Westby<br>Wyoming Attorney General's Office<br>Herschler Building, 1st Floor NW<br>Cheyenne, WY 82002 | [____] U.S. Mail<br>[____] Hand Delivered<br>[____] E-mailed<br>[ ✓ ] Efiled |
| Nicholas Vassallo<br>Assistant United States Attorney<br>P.O. Box 668<br>Cheyenne, WY 82003-0668 | [____] U.S. Mail<br>[____] Hand Delivered<br>[____] E-mailed<br>[ ✓ ] Efiled |

_/s/ Raymond L. Martin_
Raymond W. Martin

**From:** Rogers, John [mailto:JRogers4@eda.doc.gov]
**Sent:** Thursday, September 11, 2008 7:32 PM
**To:** DHaring@cheyenneairport.com
**Subject:** Re: Lease Change Question

Don't worry. All of these transactions are consistent with our grant with you. As long as your lease agreements are similar to the first one you should be fine. The requirement is that your lease to the company cannot be a giveaway, that is it needs to in the range of a fair market value in your judgment. If you have any questions call me at 406 449 5380.

---------------------------
Sent from my BlackBerry Wireless Device

---

**From:** Dave Haring
**To:** Rogers, John
**Sent:** Thu Sep 11 18:09:04 2008



Page 1 of 3

**Subject:** Lease Change Question
Mr. Rogers,

This is Dave Haring and I am the Manager of the Cheyenne Regional Airport.

In 1997, the Airport received EDA grant funding for the renovation of an old Airplane Hanger into a paint facility. The Award number was 05-01-02849. Since that project was constructed, there have been several changes in upper management at the Airport. One of the problems with those upper management changes is that, sometimes, provisions of past agreements periodically slip through the cracks. We were recently informed that one of those provisions indicated that the Airport had to notify the EDA of any changes to the lease or sale of the facility. While there have been no sales in that facility, it has been re-leased several time.

The original owner was Cheyenne Airmotive. They operated a complete paint and refurbishment company for a variety of aircraft and were also a completion center for Pilatus. Unfortunately, Airmotive got very behind in rental payments and despite every effort by the Airport to work with them, the relationship was discontinued in 2003.

Heli-Support, Inc out then took over the facility in 2003. They operated a helicopter repair and maintenance facility. But also maintained the paint facility for both their helicopters and outside work. Unfortunately, Heli-Support lost a significant contract in 2005and assigned the lease to Sky Harbor Air Service.

Sky Harbor Air Service is the Fixed Base Operator (FBO) on the Airfield. They took over the facility to maintain it as a paint facility and expand their capabilities as an FBO.

Unfortunately, Sky Harbor got significantly behind in rental payments and, again despite the Airport's best efforts, the relationship between Sky Harbor and the Airport in that facility ceased in December 2007.

The Airport held a public bid for that facility that concluded in May 2008. The bidders were Sky Harbor Air Service, Color Design, and Great Lakes Airlines. After

reviewing all of the proposals, the Airport selected Great Lakes Airlines to move forward to the lease negotiation phase.

Great Lakes plans to use the facility as an extension of their existing Cheyenne based overhaul facility for their fleet of Beech 1900 and EMB 120 Aircraft. Part of the overhaul process will involve the painting of their entire fleet. Great Lakes estimates that they will add 25 administrative and technical jobs to support the expansion.

Lease negotiations are in process so I do not have a completed lease at this time. What information would you need from us for the EDA to sign off on the new lease? Would it be possible to do without the completed lease?

Thanks in advance for any advice you can provide!

Sincerely,


David S. Haring, C.M.
Airport Manager
Cheyenne Regional Airport

# MILLER LAW FIRM, INC.
ATTORNEY AT LAW
P.O. Box 15563
CHEYENNE, WYOMING 82003
TEL. (307) 635-2881
FAX (888) 869-4988
www.dmillerlawfirm.com
dm@dmillerlawfirm.com

DONALD E. MILLER
dm@dmillerlawfirm.com

Breanne Ramirez
Paralegal
breanne@dmillerlawfirm.com

June 10, 2009

Raymond W. Martin
Sundahl, Powers, Kapp & Martin
1725 Carey Avenue
Cheyenne, WY 82003

*RE: Response to Settlement letter*

Dear Ray:

                    Redacted Due to Settlement Discussion


EXHIBIT A-2

The Board made an unfortunate choice not to allow Sky Harbor to return to the Paint Shop over a year ago. Great Lakes took another facility, instead. Now, you've disclosed Great Lakes has effectively admitted it would violate the non-competition agreement with Sky Harbor as we predicted by demanding indemnification from you. Another consequence of that bad decision is, under Federal law, any hazmat that might have been there became the Airport's responsibility.
 Paul tells me he learned that the hard way from Scott Hinderman when Sky Harbor had to pay over $20,000 to remove Cheyenne Airmotive and Heli-Support waste that was on site when he

accepted the building and despite other agreements in place for waste disposition. The stipulated rescission of the Paint Shop Lease ended any obligation Sky Harbor might have had to remove waste under that contract, as well.

Sincerely,

Donald E. Miller

cc: Paul Martin